IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ULYSEES OYOLA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JON FISHER, et al. | : | NO.  12-6093 |

**REPORT AND RECOMMENDATION**

ELIZABETH T. HEY, M.J.                                                July 24,  2013

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254, by Ulysees Oyola ("Oyola" or "Petitioner"), an individual currently incarcerated

at the State Correctional Institution ("SCI") in Smithfield, Pennsylvania.  For the reasons

that follow, I recommend that the petition be denied.

I.       **FACTS AND PROCEDURAL HISTORY**

This case arises from an incident which occurred in Philadelphia on September 22,

2002, in which Petitioner exchanged gunfire with Herberto Rodriguez ("Rodriguez") in a

dispute over drug sales, resulting in the death of innocent bystander Jose Perez

("Perez").[1]  Following a joint trial before the Honorable David N. Savitt of the

Philadelphia Court of Common Pleas, both Petitioner and Rodriguez were convicted of

first-degree murder and related weapons charges.   See Commonwealth v. Oyola, CP-51-

CR-1109322-2002 (Docket).   Judge Savitt sentenced Petitioner to life imprisonment for

the murder conviction, plus concurrent sentences of 3-to-7 years for carrying firearms

---

[1] The bullet that killed Perez was evidently discharged from Petitioner's gun rather
than from Rodriguez's.  See N.T. 06/03/04 at 27-28 (trial court's explanation for reasons
sustaining Rodriguez's demurrer to penalty-phase aggravating circumstances).

without a license and 2 years, 5 months-to-5 years for possessing instruments of crime. N.T. 06/03/04 at 35-36; Commonwealth v. Oyola, CP-51-CR-1109322-2002 (Docket).

Petitioner appealed to the Pennsylvania Superior Court, arguing that the trial evidence was insufficient to sustain the conviction for first-degree murder as opposed to third-degree murder or voluntary manslaughter, that the jury's verdict was against the weight of the evidence, and that the trial court erroneously failed to instruct the jury that they could treat a witness's purportedly inconsistent prior testimony as substantive evidence, rather than solely as impeachment material. See Direct Appeal Br. at Doc. 11 Exh A. On November 7, 2005, the Superior Court affirmed the judgment of conviction and sentence. Commonwealth v. Oyola, No. 1830 EDA 2004 (Pa. Super. Nov. 7, 2005). Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which declined review on March 15, 2006. Commonwealth v. Oyola, No. 698 EAL 2005, 897 A.2d 454 (Pa. 2006) (table).

On January 17, 2007, Petitioner filed a pro se collateral relief petition under Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9551.[2] John P. Cotter, Esquire, was appointed and filed an amended PCRA petition alleging a violation of Petitioner's right to a speedy trial. On June 22, 2010, the PCRA court dismissed the petition without a hearing. Commonwealth v. Oyola, CP-51-CR-1109322-2002 (Phila. C.C.P. June 22, 2013). On August 23, 2010, appointed counsel filed a successive PCRA petition stating that he had not appealed the dismissal despite Petitioner's request that he

_____

[2] The pro se petition alleged "ineffective counsel, inconsistent statements . . . (Batson violation, prosecutorial misconduct)," but without factual development or legal argument. Pro se PCRA Pet. at 3.

do so, and asking the PCRA court to reinstate Petitioner's appellate rights <u>nunc pro tunc</u>. On October 13, 2010, the court granted the second PCRA petition and restored Petitioner's appellate rights. <u>See</u> <u>Commonwealth v. Oyola</u>, CP-51-CR-1109322-2002 (Pa. C.C.P. Mar. 17, 2011). Appointed counsel filed Petitioner's appeal to the Superior Court and a statement of matters complained of on appeal, arguing that the trial court erred in denying Petitioner an evidentiary hearing on the issue of a purported speedy trial violation, and ineffectiveness of counsel for interfering with Petitioner's right to testify. Subsequently retained counsel (Marc J. Frumer, Esquire) filed a revised statement of errors complained of on appeal, adding a claim that trial counsel interfered with Petitioner's ability to testify at trial in support of a claim of self-defense. <u>See</u> <u>id.</u>; CP-51-CR-1109322-2002 (Docket). On November 21, 2011, the Superior Court affirmed the denial of relief, concluding that the PCRA court did not err in denying Petitioner an evidentiary hearing on the issue of a purported speedy trial violation, and that a claim of ineffectiveness of counsel for interfering with his right to testify at trial had been waived. <u>Commonwealth v. Oyola</u>, No. 3097 EDA 2010, 2-4 (Pa. Super. Nov. 21, 2011).[3] Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which declined review on September 4, 2012. <u>Commonwealth v. Oyola</u>, No. 679 EAL 2011, 51 A.3d 838 (Pa. 2012) (table).

---

[3] The Superior Court relied on appointed counsel's submission and not the additional claim submitted by subsequently retained counsel. <u>See</u> <u>Commonwealth v. Oyola</u>, No. 3097 EDA 2010 (Pa. Super. Nov. 21, 2011). As Respondents point out in their answer, <u>see</u> Doc. 11 at 16 n.7, this appears to have occurred because Mr. Cotter and not Mr. Frumer remained Petitioner's counsel of record in the Superior Court. <u>See</u> 3097 EDA 2010 (Docket Sheet).

On October 6, 2012, Petitioner filed the present pro se petition for writ of habeas corpus,[4] arguing (1) the trial evidence was insufficient to sustain a conviction for first-degree murder as opposed to third-degree murder or voluntary manslaughter, (2) ineffective assistance of trial counsel for interfering with his right to testify at trial, (3) ineffective assistance of trial counsel for failing to file and litigate a pre-trial motion requesting dismissal on grounds of a speedy trial violation, and (4) trial court error for failing to instruct the jury that they could treat a witness's inconsistent prior testimony as substantive evidence, rather than solely as impeachment material.  See Doc. 1 at 5-11 (Grounds One-Four).[5]  On March 15, 2013, the District Attorney filed a response, arguing the first claim is meritless, the second claim is procedurally defaulted, the third claim is procedurally defaulted in part and non-cognizable in part, and the fourth claim is non-cognizable and/or procedurally defaulted, and that in any event constitutes harmless error.  See Doc. 11.  On March 28, 2013, Petitioner filed a brief in support of his petition. See Doc. 12.

---

[4]The petition was docketed on October 25, 2012.  However, the federal court employs the "mailbox rule," deeming the petition filed when given to prison authorities for mailing.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  Because the petition is dated October 6, 2012, see Petition (Doc. 1) at 16, I will assume that he gave the petition to prison authorities for mailing on that date.

[5] Petitioner's claims have been reordered and renumbered for purposes of discussion.

## II.    LEGAL STANDARDS

### A.    Exhaustion and Procedural Default

Before the federal court can consider the merits of a habeas claim, the petitioner must comply with the exhaustion requirement of section 2254(b).  Exhaustion requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In addition, federal constitutional claims must be fairly presented to the state courts, meaning that the petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being asserted."  Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010) (quoting  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)).

The doctrine of procedural default is closely related to the exhaustion requirement. It is not enough that the petitioner present his claims to the state court.  He must also comply with the state's procedural rules in presenting his claims, thereby giving the state courts a full and fair opportunity to address them.  A failure to do so results in a procedural default.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

> [A] state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" Walker v. Martin, 562 U.S. __, __ [131 S. Ct. 1120, 1127] (2011) (quoting Coleman, 501 U.S. at 729-30).

Maples v. Thomas, 132 S. Ct. 912, 922 (2012). A decision based on a state procedural rule is considered independent if it does not rely on the merits of the federal claim or rest primarily on federal grounds. Harris v. Reed, 489 U.S. 255, 260 (1989); see also Ake v. Oklahoma, 470 U.S. 68, 75 (1985). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and the rule "speaks in unmistakable terms." Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996) (abrogated on other grounds, Beard v. Kindler, 558 U.S. 53 (2009)). Thus, the procedural disposition must comport with similar decisions in other cases such that there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989)).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 192-93 (quoting and citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)). To establish prejudice, the petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193.

In order for a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." McCleskey v. Zant, 499 U.S. 467, 495 (1991) (citing Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. Schlup, 513 U.S. at 324.

**B.    Merits Review**

Once the petitioner has overcome the procedural hurdles of exhaustion and procedural default, the federal courts' habeas review is limited in nature. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Werts, 228 F.3d at 195. The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. Id. at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to section 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, rebuttable only by clear and convincing evidence. Werts, 288 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). State court determinations of state law are binding and cannot be reexamined. See Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004).

The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). With respect to "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## III.    DISCUSSION[6]

### A.    Sufficiency of the Evidence

Petitioner argues the trial evidence was insufficient to sustain a conviction for first-degree murder as opposed to third-degree murder or voluntary manslaughter.  See Doc. 1 at 9 (Ground Three); Doc. 12 at 2, 11-13.[7]  Petitioner raised and exhausted this claim on direct appeal.  Respondents counter that the claim is meritless.  See Doc. 11 at 10-13.

Principles of due process dictate that a person can be convicted of a crime if, "after reviewing the evidence in the light more favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983).  Pennsylvania courts follow the same rule.  See Commonwealth v. Trill, 543 A.2d 1106, 1112 (Pa. Super. 1988) (verdict will be upheld if, "viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt") (quoting Commonwealth v. Griscavage, 517 A.2d 1256, 1257 (Pa. 1986)).

---

[6] Petitioner's habeas petition is timely filed.  His conviction became final on June 15, 2006, when the time for filing a certiorari petition in his direct appeal expired.  He filed his PCRA petition 216 days later on January 17, 2007, tolling the habeas limitations period.  See 28 U.S.C. § 2244(d)(2).  The Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal on September 4, 2012, at which time the habeas limitations period resumed running with 149 days remaining.   He filed his habeas petition 32 days later on October 6, 2012.

[7] Citations to Petitioner's brief (Doc. 12) refer to the ECF pagination.

Under Pennsylvania law, a person is guilty of first-degree murder when the Commonwealth proves beyond a reasonable doubt that the defendant unlawfully killed another human being, the defendant acted with specific intent to kill, and the killing was willful, deliberate and premeditated. 18 Pa.C.S.A. § 2502(a); Commonwealth v. Spotz, 716 A.2d 580, 583 (Pa. 1998). A specific intent to kill may be proven wholly by circumstantial evidence, and may be inferred from the defendant's use of a weapon on a vital part of the victim's body. Commonwealth v. Bond, 652 A.2d 308, 311 (Pa. 1995). Also, the doctrine of "transferred intent" has been codified in Pennsylvania as follows:

> (b) Divergence between result designed or contemplated and actual result. – When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:
>
> (1) the actual result differs from that designated or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or
>
> (2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b); see Commonwealth v. Gaynor, 648 A.2d 295 (Pa. 1994) (setting forth the Commonwealth's burden under section 303(b)).

In considering this claim on direct appeal, the Superior Court stated the following:

> Our close review of the applicable law and record in this case does not support Oyola's allegation that the evidence to convict him was insufficient. At trial, the Commonwealth

presented the testimony of Alberto Cruz ("Cruz"). Cruz testified that on September 22, 2002, he lived at 800 Tioga Street in Philadelphia, which was on the corner of 8th and Tioga Streets. N.T., 5/24/04, at 41, 56. While there, he observed Nadine Butler ("Butler") and another woman arguing over "some drugs." *Id.* at 43. Oyola became involved in the argument. *Id.* At that time, Rodriguez, who was also present, told Oyola that Oyola was not supposed to be selling drugs on that corner. *Id.* at 45. Oyola responded that "he didn't give a sh**[,]" and that "I'll be back, [expletive deleted]." *Id.* at 53-54. Oyola also stated: "Gone [sic] down, you're going down. When I come back, it's going down." *Id.* at 54. According to Cruz, Oyola also stated that "he was coming back, he did say that he was going to war." *Id.* at 55.

Cruz testified that Oyola left for about five to ten minutes, then returned. *Id.* at 57. At that time, Oyola held a gun. Cruz also observed that Rodriguez held a shotgun. *Id.* When Oyola and Rodriguez fired their weapons at each other, Cruz saw the victim, Perez, attempt to push Perez's wife and stepson into their house. *Id.* at 60. During the altercation, Perez was shot. *Id.* at 60.

The Commonwealth also presented the testimony of Juan Carlos Andino ("Andino"). Andino testified that on that same date, he observed Oyola and Rodriguez arguing. *Id.* at 146. According to Andino, Oyola stated that if Rodriguez wanted to go to "war on guns[,]" Oyola said "sure." *Id.* Rodriguez chased Oyola, but Oyala returned about ten minutes later, dressed in black. *Id.* at 150. At that time, Oyola observed that his car had been broken into. *Id.* After pacing back and forth, Oyola ducked down and began shooting at Rodriguez. *Id.* at 151. The two exchanged gun fire for one to two minutes. *Id.* Andino saw Perez trying to push his wife, Maria Medina ("Medina") inside of the house, at which time Perez was shot. *Id.* at 153.

Thus, the evidence establishes that Oyola had announced his intention to engage in a gun battle with Rodriguez, left the scene, and then returned with a weapon. The evidence further establishes that as Oyola and Rodriguez shot at each other, Perez suffered a fatal wound. This evidence, viewed in a light most favorable to the verdict winner, is sufficient to establish that Oyola intended to shoot and kill Rodriguez. Under the doctrine of transferred intent,

> the evidence is sufficient to establish that Oyola acted with
> the requisite intent to sustain his convictions.

Commonwealth v. Oyola, No. 1830 EDA 2004, at 5-6 (Pa. Super. Nov. 7, 2005).

On direct appeal, Petitioner challenged the sufficiency of the evidence only on the question of intent, and the state courts' resolution of that question comports with due process. All that is required under Jackson is that the evidence allows a rational juror to find guilt beyond a reasonable doubt, and the evidence recounted by the state court was more than sufficient to meet that minimal standard. Specifically, evidence that Petitioner had a confrontation with Rodriguez, angrily vowed to return, did in fact return armed for a gunfight, and that Petitioner and Rodriguez then engaged in a gun battle lasting approximately two minutes, was clearly sufficient to allow the jury to find that Petitioner intended to shoot and kill Rodriguez as part of a drug turf war. Therefore, by operation of the doctrine of transferred intent under state law, the evidence was also sufficient for a rational trier of fact to conclude that Petitioner had the specific intent to kill necessary to sustain a first-degree murder conviction for the death of Perez. The Superior Court's analysis of this claim was reasonable.

In his habeas petition, in addition to the element of intent, Petitioner argues that the evidence was insufficient because forensic evidence pointed to Rodriguez's gun as the source of the bullet that killed Perez, and because inconsistent testimony was presented regarding which combatant had been the aggressor. See Doc. 12 at 12.[8]

---

[8] Petitioner presents these arguments in his supporting brief under a heading labeled "Equal Protection" and within a paragraph that invokes his "right to equal protection of the law." See Doc. 12 at 11-12. However, he lists them among the reasons

Petitioner did not present these arguments to the state courts, but even if he had, neither argument would entitle him to relief.

As explained above, the evidence presented was sufficient for a rational trier of fact to conclude that Petitioner intended to kill Rodriguez, regardless of who may have been the aggressor. Additionally, Petitioner's actions in intentionally engaging in a gun battle on a public street were sufficient to establish causation under Pennsylvania law as to the death of Mr. Perez. The case of Commonwealth v. Gaynor illustrates both points. There, Gaynor and Johnson engaged in gun battle in a store, during which a bullet from Johnson's gun struck and killed a child in the store. On Gaynor's appeal of his conviction for first-degree murder, the Superior Court found the evidence sufficient to establish causation.

> We have no difficulty accepting the proposition that . . . appellant's conduct was sufficient to constitute a direct cause of death. Gaynor's exchange of gunfire in a small confined space in which he knew defenseless children were trapped was an operative cause of death, nor were his actions "so extraordinarily remote or attenuated" . . . that it would be unfair to ascribe criminal responsibility on the basis of causation.

Commonwealth v. Gaynor, 612 A.2d 1010, 1012 (Pa. Super. 1992) (citing and quoting Commonwealth v. Rementer, 598 A.2d 1300, 1305 (Pa. Super. 1991)). However, the Superior Court reversed the conviction, concluding that there was insufficient evidence of Gaynor's intent to kill. On this point, the Pennsylvania Supreme Court disagreed.

"the evidence was insufficient to support a conviction for first degree murder." Id. at 12 ¶ 4. Respondents do not address these arguments, presumably because Petitioner filed his supporting brief after Respondents filed their answer. See Docs. 11 & 12.

Commonwealth v. Gaynor, 648 A.2d 295, 297-99 (Pa. 1994). Without disturbing the Superior Court's causation analysis, id. at 297, the court upheld the first-degree murder conviction finding sufficient evidence of intent to kill under the transferred-intent theory. "We conclude under § 303(b) that the actual result can be attributed to Gaynor's intent to kill Johnson even though the latter's bullets murdered and wounded the victims." Id. at 299.

As in Gaynor, it is irrelevant that Rodriguez's gun rather than Petitioner's fired the deadly bullet. Petitioner intentionally engaged in a gun battle on a public street, and a bullet from that battle struck and killed Mr. Perez. Therefore, had Petitioner raised this objection in the state courts, they would have rejected it under Gaynor. As noted, the Superior Court reasonably rejected the sufficiency challenge Petitioner did raise, and therefore Petitioner is not entitled to relief on the merits of his sufficiency claim.

## B. Ineffectiveness for Interfering with Petitioner's Right to Testify

Petitioner also argues that counsel was ineffective for interfering with his right to testify at trial on his own behalf. See Doc. 1 at 9 (Ground One); Doc. 12 at 3-5. Respondents counter that the claim is procedurally defaulted and, in the alternative, meritless. See Doc. 11 at 16-18.

As previously noted, in presenting claims on appeal, a petitioner must present his claims in compliance with state procedural rules, thereby giving the state court a full and fair opportunity to address the claims. If a state court declines to address a constitutional claim based on a state procedural rule, the claim will be considered defaulted in the federal court.

Maples, 132 S. Ct. at 922. Here, the Superior Court declined to reach the merits of this claim on PCRA appeal because Petitioner's appellate counsel failed to include it in his court-ordered statement of errors complained of on appeal, rendering the claim waived. See Commonwealth v. Oyola, No. 3097 EDA 2010, at 4 (Pa. Super. Nov. 21, 2011). "An issue has been waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." Commonwealth v. Paddy, 15 A.3d 431, 442 (Pa. 2011) (citing 42 Pa.C.S.A. § 9544(b)). The waiver rule is firmly established in Pennsylvania. See, e.g., Supples v. Kerestes, 2010 WL 324431, *5 (W.D. Pa. Jan 21, 2010) (state rule of waiver for failing to file an appeal or raise an issue is independent and adequate) (citing Sistrunk v. Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996)).

As a result, Petitioner's claim that counsel was ineffective for interfering with his right to testify at trial on his own behalf is defaulted for purposes of federal habeas review. Petitioner has failed to overcome the default of this claim by showing cause or prejudice.[9] Similarly, Petitioner has failed to show how the failure to consider the claim

---

[9] Petitioner does not argue that the recent Supreme Court case Martinez v. Ryan, 132 S. Ct. 1309 (2012) applies to his case, and in any event I find that it does not. In Martinez, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. Nothing in Martinez suggests that it can reach beyond the ineffectiveness of counsel at the first-level post-conviction proceeding to find cause for a default. Rather, the Supreme Court made clear that the key to its exception was the need to provide at least one judicial review of a claim of ineffective assistance of trial counsel. See id. Here, Petitioner's PCRA petition included a claim that trial counsel was ineffective for dissuading him from testifying on his own behalf, and the PCRA court rejected the claim. Commonwealth v. Oyola, CP-51-CR-1109322-2002, at 4-5 (Pa. C.C.P. Mar. 17, 2011). Therefore, the claim is defaulted.

would result in a fundamental miscarriage.  Accordingly, merits review is precluded.[10]

### C. Ineffectiveness For Failing to Obtain Dismissal on Grounds of Speedy Trial Violation

Petitioner also argues that counsel was ineffective for failing to file and litigate a pre-trial motion requesting dismissal on grounds of a purported speedy trial violation. See Doc. 1 at 7 (Ground Two); Doc. 12 at 5-7.  Respondents address this argument both as to ineffectiveness for failing to claim a violation of the Sixth Amendment right to a speedy trial and for failing to claim a violation of state speedy trial rules, arguing that the former is procedurally defaulted and the latter is meritless.   See Doc. 11 at 13-16.

As previously noted, federal constitutional claims must be fairly presented to the state courts, meaning that the petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being

---

[10] Even were I to reach the merits of the claim, I would find that Petitioner is not entitled to relief because Petitioner has not shown how counsel's decision to discourage him from testifying amounts to constitutional ineffectiveness as required by Strickland v. Washington, 466 U.S. 668 (1984).  Strickland requires a petitioner to establish that counsel's performance was deficient and the deficient performance prejudiced the defense.  466 U.S. at 687.  Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  As the PCRA court explained, "[i]t is routine for defense lawyers to warn their clients of the risks associated with testifying."  Commonwealth v. Oyola, CP-51-CR-1109322-2002, at 5 (Pa. C.C.P. Mar. 17, 2011).  Even if Petitioner's testimony would not have revealed a damaging criminal record to the jury, as Petitioner argues, it is impossible to say whether his testimony would have created other problems for the defense.  In any event, in light of the other evidence admitted at trial, Petitioner has failed to show how his failure to testify prejudiced him at trial.  See Strickland, 466 U.S. at 687 (ineffectiveness of counsel requires both deficient performance and prejudice).

asserted." Greene, 606 F.3d at 93 (quoting McCandless, 172 F.3d at 261). In the Third Circuit's words, the claim raised in the state courts must be "substantially equivalent" to the claim at issue in the federal petition. Id. The federal courts have plenary review over the question whether a claim was fairly presented to the state courts. Id. at 93 n.3.

Here, Petitioner asserted this claim on PCRA appeal exclusively under state law, specifically Rule 600 of the Pennsylvania Rules of Criminal Procedure, which governs speedy trials under state law. See PCRA Appeal Br. at Doc. 11 Exh D, *6-*9. Indeed, in discussing the merit of Petitioner's ineffectiveness claim related to an alleged speedy trial violation, the PCRA court began by stating: "The instant PCRA petition is meritless because there was no Rule 600 violation." Commonwealth v. Oyola, CP-51-CR-1109322-2002, at 2 (Pa. C.C.P. Mar. 17, 2011). On PCRA appeal, the Superior Court stated the following:

> [Petitioner's] ineffectiveness claim was based on an alleged Rule 600 violation. However, his argument on the issue is substantially deficient. While he claims that it took 540 days to bring him to trial, [Petitioner] does not detail what times were excludable and makes the following bald claim regarding excusable time: "Even if the times that were excludable on the record where [sic] counted[,] it still took the Commonwealth 400 days to bring the case to trial from the date the complaint was filed." Brief for [Petitioner] at 8. Noticeably absent from [Petitioner's] brief is any explanation as to what time was excludable or how he arrived at the 400-day time period for the adjusted run date. *See Commonwealth v. Trippett*, 932 A.2d 188, 196-99 (Pa. Super. 2007) (discussing the application of Rule 600). While [Petitioner] has presented the contours of a Rule 600 claim, he has not demonstrated to this Court that he offered to prove any of the facts that would support such a claim before the PCRA court.

Commonwealth v. Oyola, No. 3097 EDA 2010, 3-4 (Pa. Super. Nov. 21, 2011). Accordingly, the Superior Court affirmed the PCRA court's decision in denying this claim without an evidentiary hearing. Id.

Two conclusions flow from the state courts' adjudication of this ineffectiveness claim. First, Petitioner never placed the state courts on notice that this claim implicated his federal speedy trial rights under the Sixth Amendment. Although the interests of the federal constitutional right to a speedy trial and state speedy trial rules partially overlap, they entail different legal analyses. For example, state speedy trial rules involve specific numbers of calendar days intended to keep all parties engaged in the process, whereas the Sixth Amendment speedy trial was designed to safeguard defendants' rights to be tried without undue delay. Compare, e.g., Commonwealth v. Dunbar, 470 A.2d 74, 78-79 (Pa. 1983) (discussing purpose of state speedy trial rules) with Vermont v. Brillon, 556 U.S. 81 (2009) (noting constitutional right to speedy trial is "amorphous," "slippery" and "necessarily relative" and Court refused to quantify it into specific number of days or months).[11] Therefore, to the extent Petitioner argues that counsel was ineffective for failing to seek dismissal on Sixth Amendment grounds, the claim is procedurally defaulted. Petitioner presents no argument regarding cause or prejudice to excuse the default, and none can be discerned, nor does Petitioner present evidence that the failure to consider the claim would constitute a fundamental miscarriage of justice.

---

[11] Analysis of constitutional speedy trial claims requires the weighing of four factors – length of the delay, reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant as a result of the delay. See Barker v. Wingo, 407 U.S. 514, 530 (1972).

Second, to the extent the ineffectiveness claim relates to an alleged violation of state speedy trial rules, the state courts' determination that no violation of Rule 600 occurred under state law is binding on this court.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions"); Priester, 382 F.3d at 402 (state court rejection of claim of state law error is binding and precludes finding counsel was ineffective for failing to raise or preserve claim of alleged error).  Therefore, Petitioner is not entitled to relief on this claim.

### D.     Trial Court Error Regarding Jury Instruction

Lastly, Petitioner argues that the trial court erred in failing to instruct the jurors that they could treat a witness's purportedly inconsistent prior testimony as substantive evidence, rather than solely as impeachment material.  See Doc. 1 at 10-11 (Ground Four); Doc. 12 at 7-10.[12]  Respondents counter that this issue is a matter of state law and is therefore non-cognizable, in the alternative it is procedurally defaulted, and in any event amounts to harmless error.  See Doc. 11 at 18-22.

In addressing this claim on direct appeal, the Pennsylvania Superior Court stated as follows:

> At trial, Medina testified that she saw [Petitioner] fire
> the first shot during the altercation.  Defense counsel
> impeached Medina with her prior testimony during the

---

[12] Assuming the basis of this claim is the same here as on appeal in the state courts, Petitioner alleges that the victim's wife, Medina, testified at the preliminary hearing that Rodriguez shot first, whereas at trial she stated that Petitioner fired first.  See N.T. 05/25/04, at 152; Doc. 12 ¶ 25.  At trial, defense counsel impeached Medina with her prior testimony.  See N.T. 05/25/04 at 152-54.

preliminary hearing. Although the prosecutor objected, the trial court overruled the objection.

At the close of the evidence, the trial court issued the following charge to the jury regarding the use of the prior inconsistent statements:

> During the direct examination and cross-examination of several witness[,] reference was made, I believe, to previous statements that these witnesses made. I'm not sure if there was evidence of previous testimony. There may have been.
>
> In any event, these statements may have been inconsistent with what the witnesses said at this trial. That's for you to decide. The evidence of these prior statements, whether consistent or inconsistent, may be considered by you to help you judge the credibility and weight you wish to give the testimony of these witnesses at trial

When defense counsel objected at the close of the jury charge, the trial court declined to further instruct the jury that the prior testimony could be used as substantive evidence. Although we agree with [Petitioner] that Medina's preliminary hearing testimony may be considered substantive evidence under [*Commonwealth v.*] *Lively*, [610 A.2d 7 (Pa. 1992)] we must conclude, for the following reasons, that the lack of an instruction did not constitute reversible error.

In *Commonwealth v. Blount*, 654 A.2d 952, 957 (Pa. Super. 1989), this Court held that [*Commonwealth v.*] *Brady* [, 507 A.2d 66 (Pa. 1986)] did not mandate a specific jury instruction that prior inconsistent statements could be used for impeachment purposes and as substantive evidence. Instead, it was enough that the trial court did not instruct the jury that the statements could *only* be considered for impeachment purposes. *Id.* [additional state law citations omitted.]

In this case, the trial court's jury instruction did not limit the jury's consideration of the prior inconsistent testimony. Instead, the trial court instructed the jury that the testimony "may be considered by you to help you judge the credibility and weight you wish to give the testimony of these witnesses at trial . . . ." Applying this Court's holdings . . ., we conclude that the trial court's instruction did not constitute

> reversible error.  Accordingly, [Petitioner's] claim to the
> contrary must fail.

Commonwealth v. Oyola, No. 1830 EDA 2004, at 10-12 (Pa. Super. Nov. 7, 2005)

(citations to record omitted) (emphasis in original).

Plaintiff concedes that it is not the province of a federal court to re-examine state

court determinations, but argues that federal courts have the duty to ensure that state law

does not infringe upon federal constitutional rights.  See Doc. 12 at 9 ¶ 29.  While that is

certainly true, the fact remains that Petitioner asserted this claim before the state courts as

a matter of state law, and the state courts addressed the claim with exclusive reliance

upon Pennsylvania Rules of Evidence and Pennsylvania caselaw.  Because the claim

implicates a jury instruction under state law and does not appear to infringe upon any

federal constitutional rights, the matter is foreclosed from habeas review.  See Estelle,

502 U.S. at 67-68; Priester, 382 F.3d at 402.

## III.    CONCLUSION

Petitioner's habeas petition is timely and asserts four claims.  His claim regarding

the sufficiency of the evidence is meritless.  His ineffectiveness claim for interfering with

his right to testify is procedurally defaulted and Petitioner has not overcome the default.

His ineffectiveness claim for failing to obtain dismissal on grounds of a speedy trial

violation is defaulted as to a Sixth Amendment claim, and he has not overcome the

default, and is non-cognizable as to a violation of the state speedy trial rule.  Finally, his

claim of trial court error in failing to instruct the jury as to use of prior inconsistent

testimony implicates only state law and is therefore non-cognizable on federal habeas review.

For the foregoing reasons, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this  24th      day of July 2013, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be denied.  There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.  Petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ELIZABETH T. HEY

_____

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE